**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**JUAN PÉREZ-MASPONS,**

**Plaintiff,**

**v.**                                          CIVIL NO. 14-1636 (GAG)

**STEWART TITLE PUERTO RICO, INC.,**

**et al.,**

**Defendants.**

## OPINION AND ORDER

Juan Pérez-Maspons ("Plaintiff") brings an employment discrimination action against Defendants Stewart Title Puerto Rico, Inc. ("STPR"), Stewart Title Guaranty Company ("STGC"), Stewart Title Company ("STC"), Stewart Information Services Corporation ("SISCO"), and Maritza Quezada ("Quezada") (collectively "Defendants").  (Docket No. 5 ¶¶ 19-25.)  Plaintiff alleges Defendants discriminated against him because of his age and disability in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-623 ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Americans with Disabilities Act, 42 U.S.C § 12112(a) ("ADA"); and 42 U.S.C. § 1983.  Plaintiff also invokes the Court's supplemental jurisdiction to bring various claims under Puerto Rico state law.[1]  Id. ¶¶ 2, 7.

---

[1] Plaintiff asserts claims under Puerto Rico Law No. 69 of 1985, P.R. LAWS ANN. tit. 29, § 1340 ("Law 69"); Puerto Rico Law No. 100 of 1959, P.R. LAWS ANN. tit. 29, §§ 146-151 et seq. ("Law 100"); Puerto Rico Law No. 379 of 1948, P.R. LAWS ANN. tit. 29, §§ 271-288 et seq. ("Law 379"); Puerto Rico Law No. 80 of 1931, P.R. LAWS ANN. tit. 29, §§ 289-90 et seq. ("Law 80"); Puerto Rico Law No. 115 of 1991, P.R. LAWS ANN. tit. 29, § 194a ("Law 115"); Puerto Rico Law No. 44 of 1989, P.R. LAWS ANN. tit. 1, § 502 ("Law 44"); Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141, 5142 ("Article 1802 and 1803") and Article II, §§ 1, 4, 6, 7, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico.  Id. ¶¶ 2, 7.

Civil No. 14-1636 (GAG)

Presently before the Court is Defendants' Motion for Summary Judgment.   (Docket No. 83.)  Plaintiff responded in opposition.  (Docket No. 92.)  Then, Defendants replied, to which Plaintiff filed a sur-reply.  (Docket No. 111; Docket No. 118.)

Defendants argue Plaintiff's ADEA discrimination and retaliation claims are time-barred, and alternatively, the evidence does not support either claim.  (See Docket No. 83.)  Defendants present two non-discriminatory, non-retaliatory justifications for their actions: (1) organizational changes affecting compensation and the delegation of work and (2) an age-neutral October 2013 Reduction-In-Force ("RIF").  After considering the motion, and all replies and responses thereto, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment at Docket No. 83.

## I.     Preliminary Matters and Admissibility Objections

### A.   Local Rule 56(c)

As a threshold matter, the Court addresses preliminary objections.  Defendants filed a Statement of Uncontested Material Facts in support of its summary judgment motion, listing 173 allegedly undisputed facts. (Docket No. 83-2.)   Subsequently, Plaintiff filed a Response in Opposition to Defendants' Statement of Uncontested Material Facts.  (Docket No. 92-1.)  In this document, Plaintiff admitted, denied, and qualified Defendants' version of the facts.  However, many of Plaintiff's responses failed to support the denial or qualification with proper citation to the record, as required by Local Rule 56(c).  Additionally, while certainly not mandatory, Plaintiff elected not to provide a separate section of additional facts in his response to Defendants' Statement of Uncontested Material Facts, as permitted by Local Rule 56(c).  Instead, Plaintiff's Response in Opposition to Defendants' Statement of Uncontested Material Facts relies primarily on admissibility objections to Defendants' evidence—and not on properly cited assertions of fact.

Civil No. 14-1636 (GAG)

B. <u>Sham Affidavit</u>

Defendants' Statement of Uncontested Material Facts draws support in large part from an affidavit executed by Quezada.  (<u>See</u> Docket No. 83-3.)  Plaintiff objects, arguing the affidavit is a self-serving "sham affidavit" because it was created after the discovery period, executed the same day Defendants filed their motion, and contains facts allegedly contradicting Quezada's deposition testimony.  (Docket No. 92-1 at 5-6.)  Plaintiff requests the Court strike all facts supported by Quezada's affidavit.  <u>Id.</u> at 6.

The sham affidavit doctrine forbids a party opposing summary judgment from submitting an affidavit contradicting prior testimony solely to create an issue of fact.  <u>Malavé-Torres v. Cusido</u>, 919 F. Supp. 2d 198, 203 (D.P.R. 2013); <u>see also</u> <u>Escribano-Reyes v. Prof'l Hepa Certificate Corp.</u>, 817 F.3d 380, 387 (1st Cir. 2016) (affirming the district court's decision to strike a sham affidavit and impose sanctions).  However, the doctrine does not bar a party from "elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition."  <u>Id.</u>; <u>see also</u> <u>Gillen v. Fallon Ambulance Serv.</u>, 283 F.3d 11, 26 (1st Cir. 2002) ("[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment.").  The self-serving nature of the affidavit, alone, does not preclude the Court from considering at affidavit at summary judgment.  <u>See</u> <u>Malavé-Torres</u>, 919 F. Supp. 2d at 204 (compiling circuit precedents allowing self-serving affidavits as admissible evidence at summary judgment).  Further, the Court need not specifically enumerate each contradiction between a party's prior testimony and the later filed affidavit in order to disregard the evidence.  <u>Orta-Castro v. Merck, Sharp & Dohme Química PR., Inc.</u>, 447 F.3d 105, 110 (1st Cir. 2006).

3

Civil No. 14-1636 (GAG)

Defendants contend Quezada's affidavit clarifies, rather than contradicts, her deposition testimony. (Docket No. 111-1 at 13-14.) The Court agrees. Insomuch as Quezada testified at her deposition that she did not know the answer to certain questions, such as the details surrounding the acquisition of STPR or source of her paycheck, she uncovered the information after her deposition and supplemented her answers in the affidavit. (Docket No. 111-1 at 13.) For example, Quezada stated that "[t]hough [she] did not know for a fact the details for the purchase of STPR by STC at the time that [her] deposition was taken . . . upon further investigation, [she] found more details as to the purchase and have come to learn that STC bought 51% of STPR's stock in 2001 and that, thereafter, in 2010, STC purchased the remaining . . . stock." (Docket No. 83-3 ¶ 6.)

The Court finds Quezada's affidavit explains and elaborates on inconclusive answers given at the deposition. See Hernández-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000) (subsequent revised testimony due to lapse of memory and new sources of information did not constitute a contradiction warranting striking an affidavit.) Notably, Plaintiff has not identified any factual basis to show Quezada's affidavit contradicts her deposition testimony. Therefore, the Court deems the following facts from Defendants' Statement of Undisputed Material Facts as properly supported by the record: ¶¶ 1-2, 13, 18-20, 25, 28, 36, 42-43, 47-48, 62, 65, 87, 91-92, 97, 106, 116, 118 133-34, 137-39, 141-42 148-49, 152, 154, 157, 171-72. (See Docket No. 83-2).

    C. Admissibility

Plaintiff also objects to the admissibility of STPR's financial statements, specifically Docket Nos. 83-14; 83-15; 83-16; 83-32; and 83-34. Plaintiff argues Quezada's affidavit fails to properly authenticate the financial statements because she did not prepare them and she lacks personal knowledge of the underlying information contained therein. (Docket No. 118-7 at 12, 17.) This argument fails.

Civil No. 14-1636 (GAG)

1    Under the federal rules, "[a] party may object that the material cited to support or dispute a

2 fact cannot be presented in a form that would be admissible."  FED. R. CIV. P. 56(c)(2).  Rule

3 56(c)(2) requires "nothing more" than "an unsworn declaration under penalty of perjury" to

4 authenticate certain business records.  Francis v. Caribbean Transp. Ltd., 882 F. Supp. 2d 275,

5 278-79 (D.P.R. 2012); see also Santos v. Nogueras, No. 11-1105 (MEL), 2012 WL 2871108, at *4

6 (D.P.R. July 12, 2012) ("evidence need not necessarily be presented in an admissible form at

7 summary judgment, as long as the proponent shows that it can be presented in an admissible form

8 at trial" with a statement that the exhibits "were in [the plaintiff's] personal knowledge and that

9 she [could] properly identify and authenticate them at trial . . . .").  In her affidavit under penalty of

10 perjury, Quezada stated STPR's financial statements were "true and accurate copies of the

11 originals that are kept under [her] custody as Vice President and General Manager of STPR."

12 (Docket No. 83-3 at 13.)  Thus, Quezada's affidavit is sufficient to authenticate STPR's financial

13 statements at the summary judgment stage.[2]

14    Lastly, the Court notes Plaintiff failed to provide proper record citations in denying

15 Defendants' Statement of Uncontested Material Facts  ¶¶ 78-81, 136, 160, 167-68, and 170.  (See

16 Docket No. 92-1 ¶¶ 78-81, 136, 160, 167-68, 170.)   Therefore, Defendants' Statement of

17 Uncontested Material Facts ¶¶ 78-81, 136, 160, 167-68, and 170 are deemed admitted.  See FED.

18 R. CIV. P. (56)(c)(1) ("[a] party asserting that a fact is genuinely disputed must support the

19 assertion by citing to particular parts of materials in the record . . . ."); see also L. CIV. R. 56(c), (e)

20 ("[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a

21

22    [2] Quezada also vouches for the authenticity of certain other Defendants' exhibits, including a list of
employees, salary information, STPR employee job titles, and Quezada's email to clients. (Docket Nos. 83-11; 83-12;

23 83-13; 83-15; 83-21.)  Hence, Defendants' Statement of Uncontested Material Facts 96-101, supported by those
exhibits, are admitted based on the authentication provided by Quezada's affidavit.

24                                                                 5

Civil No. 14-1636 (GAG)

record citation . . . . the court may disregard any statement of fact not supported by a specific citation to record material . . . .").

## II.      Relevant Factual and Procedural Background

Plaintiff brings this claim following his termination as an insurance executive and underwriter after forty-four (44) years of employment at STPR.  At the time of his termination, Plaintiff was seventy-eight (78) years old.  (Docket Nos. 83-2 ¶ 3; 92-1 ¶ 3.)  From 1977 until the date of his termination, Plaintiff held the position of Vice President.  (Docket Nos. 83-2 ¶ 5; 92-1 ¶ 5.)  As Vice President, Plaintiff underwrote title insurance policies and performed a variety of tasks related to the origination, investigation, and maintenance of title insurance policies.  (Docket Nos. 83-2 ¶ 6; 92-1 ¶ 6.)

Beginning in 2001, STPR underwent a series of changes in ownership, governance, and organizational structure.  In 2001, a different company, Stewart Title Company ("STC"), purchased fifty-one percent of the shares of STPR.  (Docket Nos. 83-2 ¶ 9; 92-1 ¶ 9.)  In 2010, STC purchased the remaining forty-nine percent of STPR's shares.  (Docket Nos. 83-2 ¶ 11; 92-1 ¶ 11.)  Changes to STPR's ownership also brought management changes.  From before 2001 until 2003, Mr. Eusebio Dardet served as President of STPR.  (Docket Nos. 83-2 ¶ 10; 92-1 ¶ 10.)  From 2003 until 2012, Mr. Pablo Dardet, Eusebio's son, served as President of STPR.  (Docket Nos. 83-2 ¶ 12; 92-1 ¶ 12.)   In mid-2012, Mr. Steve M. Lessack ("Lessack") was appointed Chairman of STPR's Board.  (Docket Nos. 83-2 ¶ 32; 92-1 ¶ 31.)

Also during this time, Quezada gained an increasing degree of control over STPR's organizational structure.  In 2005, Quezada was a Technology Integrator for STGC.  (Docket Nos. 83-2 ¶ 22; 92-1 ¶ 21.)  By 2010, Quezada was an Operations Manager, a role that included responsibilities for overseeing STPR's operations.  (Docket Nos. 83-2 ¶¶ 25, 26; 92-1 ¶¶ 24, 25.)

Civil No. 14-1636 (GAG)

In 2013, Quezada was named Vice President and General Manager for STPR.  (Docket Nos. 83-2 ¶ 93; 92-1 ¶ 81.)  In that role, Quezada oversaw daily operations at STPR, where she sought to establish policies for title searches, routinize underwriting responsibilities, and streamline claims brought by policy holders.[3]  (Docket Nos. 83-2 ¶¶ 26, 27; 92-1 ¶¶ 25, 26.)

In addition to management changes, many aspects of STPR's compensation structure changed too.  Initially, Plaintiff's compensation package included the following: (i) an annual base salary of $18,000; (ii) monthly commissions between three and five percent of STPR's total monthly sales; (iii) a car allowance; and (iv) health insurance.  (Docket No. 83-2 ¶¶ 7, 8, 14; 92-1 ¶¶ 7, 8, 14.)  When the commission portion of Plaintiff's compensation package was eliminated in August 2012, Plaintiff's annual salary was increased from $18,000 to $70,000.  (Docket Nos. 83-2 ¶ 39; 92-1 ¶ 38.)  These compensation changes were applied to other STPR executives, including Mr. Pablo Dardet (forty-seven years old at the time) and Mr. Nicolas Dardet (forty-eight years old at the time).  (Docket Nos. ¶¶ 41-43; 92-1 ¶¶ 40-42.)

On July 12, 2012, Quezada requested that Plaintiff provide a description of his job responsibilities.  (Docket Nos. 83-2 ¶ 88; 92-1 ¶ 77.)  In response, Plaintiff wrote his primary duties were to: (i) act as corporate officer for policy underwriting; (ii) address Property Registry notifications; and (iii) analyze legal issues.  (Docket Nos. 83-2 ¶ 89; 92-1 ¶ 78.)

On August 12, 2012, Plaintiff filed an internal complaint with his employer claiming the elimination of his commission constituted a discriminatory act based on age.  (Docket Nos. 83-2 ¶ 53; 92-1 ¶ 51.)  In his letter, Plaintiff complained his employer had sought to reduce his previous responsibilities and limit his tasks to clerical duties.  (Docket 93-11 at 2.)  Finally, Plaintiff's

---

[3] Plaintiff appears to dispute the effectiveness of these changes but does not explicitly deny them.  (Docket No. 92-1 ¶¶ 25, 26.)  Whether the changes were effective is not the same question as whether they happened.  Therefore, the changes to STPR brought under Quezada's management are undisputed.

Civil No. 14-1636 (GAG)

attorney wrote that the elimination of Plaintiff's commission, along with his employer's other actions, could "easily be encompassed in an age discrimination suit against any employer."  Id.  The next month, Plaintiff was informed STPR had reviewed the internal complaint and that an investigation was forthcoming.[4]  (Docket Nos. 83-2 ¶ 55; 92-1 ¶ 53.)

Plaintiff also alleges that at some point Ms. Ana Robles ("Robles"), another STPR employee, warned Plaintiff to "be careful" because he was "not wanted" at STPR and also that he was "being pressured to retire."  (Docket Nos. 83-2 ¶ 158; 92-1 ¶ 136.)  However, Robles only worked at STPR until July 5, 2011.[5]  (Docket Nos. 83-2 ¶ 159; 92-1 ¶ 137.)

Plaintiff had a number of conversations with his employer about the possibility of retirement.  These conversations took place between 2010 and 2012.[6]  (Docket Nos. 83-2 ¶ 160; 92-1 ¶ 138.)  In 2010, Plaintiff approached Quezada to ask whether retirement was a possibility for him.  (Docket Nos. 83-2 ¶ 160; 92-1 ¶ 138.)  Then, in July 2012, Plaintiff approached Lessack and again asked about retiring.  (Docket Nos. 83-2 ¶ 160; 92-1 ¶ 138.)  Additionally, the record appears to show Plaintiff had other pre-2012 conversations about the possibility of retirement, though it is not clear who initiated these conversations.  (Docket No. 93-11 at 2.)  All of these discussions took place before Plaintiff filed his August 2012 internal complaint.  Plaintiff did not discuss retirement with Defendants after July 2012.  (Docket Nos. 83-2 ¶ 161; 92-1 ¶ 139.)

---

[4] The parties dispute the scope and sufficiency of the investigation.  (See Docket Nos. 83-2 ¶¶ 53, 56-59; 92-1 ¶¶ 52-54.)  Nevertheless, the parties agree that by December 2012, STPR had determined Plaintiff's internal complaint was unfounded and concluded the investigation.  (Docket Nos. 83-2 ¶ 61; 92-1 ¶ 56.)

[5] Plaintiff expressly admits this fact.  (Docket No. 92-1 ¶ 137.)  At the same time, Plaintiff asserts "it must be clarified that Ana Robles left SJA in the summer of 2012."  Id. ¶ 136.  Yet, Plaintiff provided no factual citation for this claim, so Plaintiff's 'clarification' is ignored.

[6] Once again, Plaintiff admits this fact "in part" without making an express denial.  (Docket No. 92-1 ¶ 138.)  That alone is grounds for deeming the fact admitted.  L. Civ. R. 56(c).  Moreover, Plaintiff's attempt to dispute the timing of any retirement discussion is not supported and lacks any citation to the record.  (Docket No. 92-1 ¶ 138, citing Defendants' Exhibit 80, which does not exist on the docket.)

Civil No. 14-1636 (GAG)

In early 2013, after concluding its investigation into Plaintiff's internal complaint, STPR's new management implemented a number of changes relating to its operational structure. These changes fall into two broad categories: (1) changes to corporate policy aimed at streamlining efficiency and (2) an October 2013 "Reduction-in-Force" ("RIF").

The corporate policy changes (i) eliminated commissions for STPR executives, including Plaintiff; (ii) limited underwriting duties to Puerto Rico licensed attorneys; and (iii) referred property registration notifications and policy claims to STGC, another subsidiary of STC. (Docket Nos. 83-2 ¶¶ 39, 44, 49, 52; 92-1 ¶¶ 38, 42, 47, 50.) The commissions were eliminated because they created a high overhead cost to STPR. (Docket Nos. 83-2 ¶ 37; 92-1 ¶ 36.) The underwriting duties were shifted to Puerto Rico attorneys because of an increase in claims by policyholders between 2010 and 2013. (Docket Nos. 83-2 ¶ 44; 92-1 ¶ 42.) Starting in March 2013, property and policy claims were sent to STGC, a change Lessack had implemented previously with other STC subsidiaries. (Docket Nos. 83-2 ¶ 52; 92-1 ¶ 50.) Additionally, in March 2013, Quezada ordered that no work would be assigned to Plaintiff without her prior review and approval. (Docket No. 83-6 at 222.)

Through the October 2013 RIF, the managers of STPR terminated seventeen (17) of STPR's thirty-one (31) employees. (Docket Nos. 83-2 ¶ 96; 92-1 ¶ 84.) In early September 2013, Quezada recommended specific workforce reductions to Lessack, which Lessack accepted and implemented. (Docket Nos. 83-2 ¶¶ 80, 82; 92-1 ¶¶ 72, 73.) On October 7, 2013, after the completion of the reductions, only fourteen (14) employees remained at STPR. (Docket Nos. 83-2 ¶ 96; 92-1 ¶ 84.)

In response, Plaintiff provides some evidence to contest Defendants' policy change and October 2013 RIF justifications for Plaintiff's termination. First, Plaintiff's secretary was fired in

9

Civil No. 14-1636 (GAG)

2008, along with other STPR employees, as part of a cost saving measure. (Docket Nos. 83-2 ¶ 133; 92-1 ¶ 113.) Second, as discussed above, Plaintiff's commissions were repeatedly reduced and eventually terminated altogether. (Docket Nos. 83-2 ¶¶ 7, 8, 14; 92-1 ¶¶ 7, 8, 14.) Third, Plaintiff's workload diminished after he filed his August 2012 internal complaint. (Docket Nos. 83-2 ¶ 144; 92-1 ¶ 123.) He received fewer calls, was referred fewer cases for underwriting, received fewer property registry notifications, and attended fewer closings. (Docket Nos. 83-2 ¶ 144; 92-1 ¶ 123.)

More broadly, Plaintiff alleges that from 2007 to 2013, he was ignored, excluded from STPR management discussions, denied a computer (alternatively, denied instruction on how to use a computer), and subject to a "war of memoranda" with Mr. Pablo Dardet. (Docket Nos. 83-2 ¶ 108; 92-1 ¶ 93.) Despite these additional problems, Plaintiff was an excellent employee, both before and after 2007. (Docket Nos. 83-2 ¶ 129; 92-1 ¶ 109.) Additionally, Plaintiff was always able to execute his duties in an effective, even excellent manner. (Docket No. 83-2 ¶ 130; 92-1 ¶ 110.)

For one week in September 2013, Plaintiff was hospitalized for a kidney stone. (Docket Nos. 83-2 ¶¶ 162, 166, 169; 92-1 ¶¶ 140, 144, 147). After his release from the hospital, Plaintiff stayed home on doctors' orders. (Docket Nos. 83-2 ¶¶ 165, 166; 92-1 ¶¶ 143, 144.) Upon his return to work on October 15, 2013, Quezada informed Plaintiff of his termination. (Docket Nos. 83-2 ¶ 169; 92-1 ¶ 147). Plaintiff was seventy-eight (78) years old when he was terminated.

On January 21, 2014, Plaintiff filed two identical age discrimination charges against STPR, STGC and SISCO with the Equal Employment Opportunity Commission ("EEOC"). (Docket Nos. 83-2 ¶ 102; 92-1 ¶ 87.) In the complaint, Plaintiff checked the "age" box as the basis for alleged discrimination based on a pattern of continuous acts from August 2, 2012 to October 15,

10

Civil No. 14-1636 (GAG)

2013.  (Docket Nos. 83-2 ¶ 104; 92-1 ¶ 89.)  On April 23, 2014, Plaintiff filed additional charges against SISCO, STGC, STC and STPR, claiming that his termination violated the ADA and the ADEA.[7]  (Docket No. 83-2 ¶ 105.)

On August 31, 2015, STPR permanently closed its operations and terminated its remaining twelve employees.  (Docket Nos. 83-2  ¶ 101; 92-1 ¶ 86.)

## III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

---

[7] Plaintiff attempts to dispute this fact.  (See Docket No. 92-1 ¶ 90.)  However, the factual support Plaintiff purports to rely on are two Spanish language documents without an English translation.  (Docket No. 96-8; 96-9.)  Pursuant to 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."  See Puerto Ricans For P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (permitting the district court to rely on foreign court decisions only if those decisions have been put into the record in an English translation).  Therefore, Defendant's statement of this fact is deemed admitted.

Civil No. 14-1636 (GAG)

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  The Court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

IV.     **Legal Analysis**

A.  Timeliness of Plaintiff's ADEA Claims

Defendants argue Plaintiff's age discrimination claim is time-barred because Plaintiff failed to file a charge with the EEOC within 300 days from the 2012 elimination of his commission. Plaintiff counters that the EEOC complaint in January 2014 was not merely premised on the elimination of Plaintiff's commission in 2012, but rather, it stemmed from a pattern of discriminatory acts, eventually culminating in his termination on October 15, 2013.  (Docket Nos. 92 ¶ 20, 29-30; 90-1 at 3-6.)

Under the ADEA, a plaintiff must file an employment discrimination complaint with the EEOC within 300 days of the alleged discrimination before bringing suit in federal court.  Ramos

Civil No. 14-1636 (GAG)

v.Vizcarrondo, 120 F. Supp. 3d 93, 103 (D.P.R. 2015) (citing Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 21 (1st Cir. 2001) *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). The EEOC complaint must contain a statement generally describing the actions or practices that form the basis of the complaint. Ramos, 120 F. Supp. 3d at 103. However, under the "continuing violation doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). Termination, failure to promote, refusal to hire, a change of supervisor, and the failure to assign work constitute "discrete acts;" and each can "start[ ] a new clock" for filing an administrative complaint. Id.

Here, Plaintiff alleged a series of discriminatory acts including the dismissal of employees with seniority from 2009 to 2010, management pressure for Plaintiff to retire in 2010, the elimination of Plaintiff's commission in 2012, and his termination in October 2013. Plaintiff's termination on October 15, 2013, which starts the clock for filing administrative complaints anew, was well within the 300-day limitations period. Any previous, similar discriminatory conduct alleged by Plaintiff can also be considered by the Court because it is substantially related to his termination. Therefore, Plaintiff's age discrimination claim is timely.[8]

As to Plaintiff's retaliation claim, Defendants argue Plaintiff failed to exhaust administrative remedies because he did not incorporate any factual allegations pertaining to retaliatory actions in his EEOC complaints. Plaintiff contends the exhaustion of administrative

---

[8] Defendants also argue that Plaintiff's ADEA hostile work environment claim is time-barred as to any alleged age-based harassment before Pablo Dardet left the company in 2012. (Docket No. 83-1 at 34-36.) Because the Court finds the ADEA age discrimination claim is timely, the age-based hostile work environment claim based on the same facts is not time-barred under the continuing violation doctrine. See Ayala, 780 F.3d at 57 ("a hostile work environment claim requires repeated conduct to establish its viability, therefore, recovery for age-based harassment that otherwise would be time-barred is permissible so long as a related act fell within the limitations period.").

Civil No. 14-1636 (GAG)

remedies is not required because his retaliation claim is reasonably related to the age discrimination claim as both claims share the same factual allegations.

Plaintiff must put Defendants on notice of a retaliation claim by incorporating related facts in his EEOC complaint.  See Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005) ("the scope of the lawsuit is . . . constrained by those allegations [in an EEOC complaint] in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency."). However, the First Circuit has recognized an exception to the normal exhaustion rule, where a claim of retaliation survives what would otherwise be a failure to exhaust administrative remedies if the retaliation claim is "reasonably related to and grows out of the discrimination complained of . . . ."  Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85-87 (1st Cir. 2008); Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 6 (1st Cir. 2001) ("[r]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency."); see also Rivera-Santiago v. Abbott Pharm. P.R. Ltd., 609 F. Supp. 2d 167, 179 (D.P.R. 2009) ("a [retaliation] claim may be bootstrapped onto an ADEA discrimination claim if a plaintiff has adequately exhausted administrative remedies for the ADEA claim.").

This Court has determined Plaintiff exhausted administrative remedies as to his ADEA age discrimination claim.  Plaintiff's retaliation claim is based on his filing of an internal complaint with the employer alleging age-based discriminatory action.  (Docket No. 5 ¶¶ 33, 34.)  Plaintiff's retaliation claim is therefore reasonably related and factually integrated to his age discrimination claim.  Thus, Plaintiff effectively exhausted administrative remedies as to his retaliation claim.

### B.  ADEA: Age Discrimination Claim

The ADEA forbids an employer from discharging an employee because of his age. 29 U.S.C. § 623(a)(1); Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir.

**Civil No. 14-1636 (GAG)**

2011).  To prevail on an ADEA claim, an employee must establish by a preponderance of the evidence that age was the *but-for* cause of his or her termination.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (emphasis added).  Where the employee lacks direct evidence, the Court utilizes the burden-shifting framework established by the Supreme Court in McDonnell Douglas to facilitate the process of proving discrimination by circumstantial evidence.  Bonefont-Igaravidez, 659 F.3d at 123 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 802-05 (1973)).

Initially, Plaintiff bears the burden of establishing the four-prong *prima facie* case: (1) he was at least forty years old at the time of the alleged adverse employment action; (2) he was qualified for his position; (3) his employment was terminated; and (4) his employer either did not treat age neutrally or retained younger employees in the same position.  Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 571 (1st Cir. 2012).  Satisfying the *prima facie* case creates a presumption that the employer discriminated against the Plaintiff unlawfully.  Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995).

Upon a sufficient *prima facie* showing, the burden of production shifts to defendant "to articulate a legitimate, nondiscriminatory basis for the termination."  Cruz, 699 F.3d at 571.  Once defendant sets forth a non-discriminatory basis for the employment action, the inference raised by the *prima facie* case dissolves and the final burden transfer occurs.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991) (citing Freeman v. Package Mach. Co., 865 F.2d 1331, 1336 (1st Cir. 1988)).  At the final stage of the burden-shifting framework, plaintiff must show the reason given for the discharge is "merely a pretext for impermissible age discrimination."  Id.  To make a showing of pretext, plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."  Melendez v. Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010).

15

Civil No. 14-1636 (GAG)

1.  Plaintiff's *Prima Facie* Case

Plaintiff has presented no direct evidence of age discrimination.  As such, the analysis begins with the four prongs of Plaintiff's *prima facie* case.  The first three prongs are easily satisfied: (i) Plaintiff was seventy-eight (78) years old at the relevant time; (ii) he satisfied legitimate job expectations while employed at STPR; and (iii) he was terminated on October 15, 2013.  The same cannot be said about the fourth element of the *prima facie* case.

Generally, the fourth prong is met when the employer seeks a younger replacement with similar qualifications.  Mesnick, 950 F.2d at 823.  However, a reduction in force, by definition, reduces the overall size of the employer's workforce and may not involve hiring any replacements. Accordingly, to establish the fourth prong, Plaintiff must show either (i) his employer did not treat age neutrally or (ii) his employer retained younger employees in the same position.  Cruz, 699 F.3d at 571.  However, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993). The undisputed facts show Plaintiff cannot establish either element of the fourth *prima facie* prong.

First, Defendants' treatment of Plaintiff was neutral with respect to age.  As a result of the October 2013 RIF, over half of STPR's employees were terminated, including Plaintiff.  (Docket No. 83-2 ¶ 96.)  Some terminated employees were over forty, some were under forty.  Id. ¶ 99. The record does not suggest the October 2013 RIF used age as a factor in any employee termination decisions.   Additionally, the undisputed facts show Plaintiff approached his supervisors at least twice between 2010 and 2012 to discuss the possibility of retirement.  (Docket Nos. 83-2 ¶ 160; 92-1 ¶ 138.)  Plaintiff's retirement inquiries do nothing to establish Defendants' lack of neutrality with respect to age.

16

**Civil No. 14-1636 (GAG)**

Second, Plaintiff was not replaced by a younger employee.  Plaintiff's three main job duties were to (i) act as corporate officer for policy underwriting; (ii) address Property Registry notifications; and (iii) analyze legal issues and documents.  (Docket Nos. 83-2 ¶ 89; 92-1 ¶ 78.) Underwriting responsibilities and legal issues were reassigned to Puerto Rico licensed attorneys. (Docket No. 83-2 ¶¶ 44, 49, 91.)  Property Registry issues were sent to STGC.  (Docket No. 83-2 ¶ 52.)  Defendants simply reassigned the functions of Plaintiff's job without retaining someone new. See LeBlanc, 6 F.3d at 846 (finding plaintiff was not replaced by a co-worker who absorbed some of plaintiff's duties because the co-worker was not hired to perform plaintiff's duties).

Consequently, the record is devoid of evidence to support the fourth element of the *prima facie* case.  Therefore, Plaintiff's ADEA age discrimination claim fails at the *prima facie* stage.

## 2. Defendants' Burden

Defendants must satisfy their burden of production by showing a legitimate, nondiscriminatory basis for the termination.  Cruz, 699 F.3d at 571.  Here, Defendants' legitimate business reasons for Plaintiff's termination were two-fold: (i) Plaintiff's employer sought to reassign job duties and streamline STPR's policies, and (ii) the October 2013 RIF sought to significantly downsize STPR's operation.  (See Docket Nos. 83-2 ¶¶ 77, 78; 92-1 70, 71.)

## 3. Pretext

Even if Plaintiff had established the *prima facie* case, Plaintiff's age discrimination claim fails because Plaintiff cannot show the purported reasons for his firing were pretext for STPR's underlying age-based animus.

To survive summary judgment, Plaintiff must show Defendants' business justifications were mere pretext, and that the real motivation for his termination was age discrimination. Melendez, 622 F.3d at 52 (citing Feliciano de la Cruz, 218 F.3d at 6). To do so, Plaintiff must

17

Civil No. 14-1636 (GAG)

1    "elucidate specific facts which would enable a jury to find that the reason given is not only a sham,

2    but a sham intended to cover up the employer's real motive: age discrimination." Melendez, 622

3    F.3d at 52 (citing Mesnick, 950 F.2d at 824).

4         Though a court may consider the supporting facts for plaintiff's *prima facie* case, the

5    inference of discrimination "originally attributable to those facts no longer pertains." Hidalgo v.

6    Overseas Condado Ins. Agencies, 120 F.3d 328, 335 (1st Cir. 1997) (quoting Sánchez v. Puerto

7    Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994)).   Ultimately, the evidence as a whole must be

8    sufficient for a jury to infer Defendants' decision was motivated by age. Hidalgo, 120 F.3d at 337;

9    see also Mesnick, 950 F.2d at 825 (the "ADEA does not stop a company from discharging an

10   employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not

11   stem from the person's age.").   The key inquiry is whether the decision maker—that is, the

12   employer—believed its stated reason to be credible. Mesnick, 950 F.2d at 824.

13        In this case, Plaintiff has not presented any specific facts to show Defendants' justifications

14   were merely pretextual.  Instead, Plaintiff has only attacked the legitimacy of Defendants' business

15   reasons for implementing the October 2013 RIF.   (See Docket No. 92-1 ¶ 63.)   For example,

16   Defendants show that nine (9) of the fourteen (14) STPR employees who remained after the

17   October 2013 RIF were over the age of forty (40).  (Docket No. 83-2 ¶ 99.)  Plaintiff denies this

18   fact, but asserts only legal arguments—not contrary facts—in response.  (Docket No. 92-1 ¶ 85.)

19   Additionally, Plaintiff disputes STPR's economic hardship as the basis for the October 2013 RIF

20   by showing STPR paid a $500 bonus to its employees in March 2013.  (Docket No. 92-1 ¶ 63.)

21        However, even if Plaintiff were correct that the October 2013 RIF was conducted for

22   ulterior motives (a claim without factual support in the record), that argument misses the point.  It

23   does not necessarily follow that the reason for Plaintiff's termination was his *age*.  See Hidalgo v.

24                                              18

**Civil No. 14-1636 (GAG)**

Overseas-Condado Ins. Agencies, Inc., 929 F. Supp. 555, 561 (D.P.R. 1996) ("[f]inancial evidence suggesting that a decision, in hindsight, may not have been prudent is not evidence of improper motive; the ADEA is not violated by erroneous or even illogical business judgment") (citation omitted). Plaintiff has presented no additional fact to point in the direction of any age-based motive. Viewing the evidence as a whole and in the light most favorable to Plaintiff, there is insufficient factual support for a reasonable fact-finder to conclude Defendants' termination decision was motivated by age.

Plaintiff has neither established the *prima facie* case for age discrimination nor presented sufficient evidence that Defendants' proffered reasons were pretext for age discrimination. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as Plaintiff's ADEA age discrimination claim.[9]

### C.  ADEA: Retaliation Claim

In his Amended Complaint, Plaintiff's brings a retaliation claim under Title VII.  (Docket No. 5 ¶¶ 75-79.)  Title VII prohibits workplace discrimination on the basis of race, color, religion, or national origin. 42 U.S.C. § 2000e-2(a); see also § 2000e-3(a) (prohibiting retaliation following an employee complaint of discrimination on those bases).  Here, the events at issue are Plaintiff's 2012 internal complaint, which alleged age-based discrimination, and the allegedly retaliatory acts that followed thereafter.  (Docket Nos. 83-2 ¶¶ 143, 144; 92-1 ¶¶ 122, 123.)  Plaintiff's 2012 internal complaint was an ADEA-protected activity.  See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84-85 (1st Cir. 2006) (finding an informal age discrimination complaint to the management constituted ADEA-protected conduct).  Because the analytical framework for ADEA

---

[9] For the same reasons, Plaintiff's claim for willful violation under the ADEA fails as well.  (See Docket No. 5 ¶¶ 73, 74.)

19

**Civil No. 14-1636 (GAG)**

discrimination and retaliation cases was patterned after the framework for Title VII cases, the *prima facie* elements of a retaliation claim under Title VII and the ADEA are identical, and the precedents are largely interchangeable.  See Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 3-4 (1st Cir. 1993).  Therefore, the Court analyzes Plaintiff's claim pursuant to the framework of an ADEA retaliation claim.[10]

It is unlawful for an employer to discriminate against an employee "because such individual . . . has opposed any practice" prohibited by the ADEA.  29 U.S.C. § 623(d).  Plaintiff claims his employer retaliated against him after he exercised his ADEA-related rights by filing his August 2012 internal complaint alleging age discrimination.  Even when a plaintiff's ADEA age discrimination claim fails, he may still succeed on a retaliation claim under ADEA.  E.g., Nieves Perez v. Doctors' Ctr. Bayamon, No. 09-2212 (GAG), 2011 WL 1843057, at *3 (D.P.R. May 16, 2011).

Absent direct evidence, courts analyze ADEA retaliation claims through a burden-shifting framework similar to the three-step process used to evaluate ADEA age discrimination claims, albeit with some modifications.  Mesnick, 950 F.2d at 827.  First, a plaintiff must meet the three element *prima facie* case by showing (i) plaintiff engaged in ADEA protected conduct; (ii) plaintiff was subjected to an adverse employment action; and (iii) a causal connection between the protected conduct and the adverse employment action.  Id. (citing Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991), cert. denied, 501 U.S. 1218 (1991).  Establishing a *prima facie* case of retaliation is not an onerous burden.  Martinez-Jordan v. Baxter Healthcare Corp., 608 F. Supp. 2d 224, 243 (D.P.R. 2008).

---

[10] The Court notes that Defendants employed the same analysis in support of their Motion for Summary Judgment.  (See Docket No. 83-1 at 19 n.8.)

20

Civil No. 14-1636 (GAG)

If plaintiff makes out a *prima facie* case of retaliation, the burden of production shifts to defendant to "articulate a legitimate, non-retaliatory reason" for its employment decision.  Trainor v. HEI Hosp., LLC, 699 F.3d 19, 27 (1st Cir. 2012) (quoting McMillan v. Mass. SPCA, 140 F.3d 288, 309 (1st Cir. 1998)).  If defendant meets this burden of production, the inquiry proceeds to the third, final step, where plaintiff must show defendant's proffered legitimate reason is pretext masking retaliation.  Trainor, 699 F.3d at 27 (citing McMillan, 140 F.3d at 309).  Ultimately, plaintiff must demonstrate a genuine issue of material fact as to whether retaliation was the true motive for the adverse employment action in question.  Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) (citing Mesnick, 950 F.2d at 828).

### 1.  Plaintiff's *Prima Facie* Case

Plaintiff must first set forth the *prima facie* case for retaliation.  Defendants correctly concede the first two elements: (i) Plaintiff's August 2012 internal complaint was protected conduct and (ii) Plaintiff suffered adverse employment action after he filed the August 2012 internal complaint.  (Docket No. 83-1 at 23.)  The parties dispute whether the third element—causation—is satisfied.

At the summary judgment stage, plaintiff must "make a colorable showing of a causal connection" between the protected activity and the adverse employment action.  Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007).  Many different sources of circumstantial evidence are available to show the required causal connection at summary judgment.  Mesnick, 950 F.2d at 828.  Often, a close temporal proximity between the protected activity and the adverse action will suffice to demonstrate a causal connection.  See, e.g., Delanoy v. Aerotek, Inc., 614 F. Supp. 2d 200, 211 (D.P.R. 2009) (where multiple complaints by an employee and multiple adverse actions by an employer over a four-month period established a *prima facie* causal connection at summary

21

Civil No. 14-1636 (GAG)

judgment).   Additionally, evidence of disparate treatment during the period of time between the protected activity and adverse action is sufficient to show a causal connection.  Martinez-Jordan, 608 F. Supp. 2d at 244 (citing Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003).

In this case, Plaintiff and Quezada both testified to Quezada's March 2013 directive,[11] which required Quezada's prior approval before any work was assigned to Plaintiff.  (Docket No. 83-6 at 222.)  This directive was ordered approximately three months after the investigation into Plaintiff's internal complaint concluded.  Quezada's directive seemingly applied only to Plaintiff. Quezada's own testimony regarding her directive clearly satisfies the requirement of "*some evidence of retaliation by a pertinent decision maker.*"  Albite v. Polytechnic Univ. of P.R., Inc., 5 F. Supp. 3d 191, 198 (D.P.R. 2014) (quoting Sánchez-Rodríguez v. AT&T Mobility P.R. Inc., 673 F. 3d 1, 15 (1st Cir. 2012).   This type of disparate treatment is sufficient to establish a causal connection between the employee's protected activity and the subsequent adverse employment action.  Martínez-Jordán, 608 F. Supp. 2d at 244.  Plaintiff has set forth sufficient evidence of the causal connection between his August 2012 internal complaint and his October 15, 2013 termination.  Therefore, Plaintiff has met his *prima facie* burden.

2.   Defendants' Burden

Defendants offer three non-retaliatory reasons for Plaintiff's termination.  First, STPR implemented a policy change limiting underwriting duties to Puerto Rico licensed attorneys. (Docket No. 83-2 ¶ 44.)  Second, STPR reassigned Property Registry notifications to another

---

[11] Plaintiff includes this document as an exhibit supporting Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment.  (Docket No. 96-15.)  However, the text of the document is in Spanish.  Inexplicably, Plaintiff failed to provide the Court with an English translation.  Pursuant to 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." See Puerto Ricans For Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (permitting the district court to rely on foreign court decisions only if those decisions have been put into the record in an English translation). Therefore, the Court does not consider the document provided by Plaintiff at Docket No. 96-15.  Instead, the Court relies on deposition testimony from Plaintiff and Quezada on this issue.  (See Docket No. 83-6; Docket No. 93-13.)

Civil No. 14-1636 (GAG)

1   subsidiary, STGC.  (Docket No. 83-2 ¶ 50.)  Third, Defendants assert the general argument that a

2   non-retaliatory firing naturally followed from Plaintiff's reduction in work.  (See Docket No. 83-1

3   at 25.)   Since Defendants have provided a non-retaliatory justification for Plaintiff's adverse

4   employment action, the burden shifts back to Plaintiff to show that a genuine issue of material fact

5   exists as to whether Defendants' justifications were pretext calculated to mask the true motivation

6   behind Plaintiff's termination: retaliation.  Mesnick, 950 F.2d at 828.

7                                    3.  Pretext

8          Without  direct  evidence,  Plaintiff  must  present  circumstantial  evidence  to  show

9   Defendants'  retaliatory  conduct  was  pretextual.   Mesnick,  950  F.2d  at  827-28.   This  can  be

10  accomplished in numerous ways.  For example, pretext may be shown by evidence of differential

11  treatment in the workplace, statistical evidence of disparate treatment, temporal proximity between

12  the protected activity and the adverse action, or by employer statements evidencing a retaliatory

13  intent.  Id. at 828.  Regardless of the source of proof, Plaintiff must set forth enough evidence such

14  that a reasonable jury could infer the Defendants retaliated against him because Plaintiff engaged

15  in an ADEA-protected activity.  Id. (citations omitted).

16         Plaintiff's pretext argument is relatively straightforward.   After filing his August 2012

17  internal complaint, Defendants retaliated against him in two-steps.   First, from August 2012 to

18  October 2013, his workload was reassigned and redistributed to minimize his responsibilities.

19  (Docket Nos. 83-2 ¶ 144; 92-1 ¶ 123.)  Second, on October 15, 2013, he was fired in retaliation for

20  his internal complaint.  (Docket Nos. 83-2 ¶ 169; 92-1 ¶ 147.)

21         This  pretext  argument  is  supported  by  deposition  testimony  from  both  Plaintiff  and

22  Quezada.   As  discussed above, Quezada testified at her deposition about a March 27, 2013

23  memorandum she wrote instructing "from thereon any work that was assigned to Juan Pérez-

24                                        23

Civil No. 14-1636 (GAG)

Maspons had to be previously approved by [Quezada]." (Docket No. 83-6 at 222.) Quezada explained at her deposition that the memorandum was directed to another STPR employee who was giving Plaintiff underwriting assignments, thereby violating the new corporate policy that all underwriting tasks were to be completed by Puerto Rico licensed attorneys. Id. at 223. Nevertheless, based on her deposition testimony, Quezada ordered that *any* work assigned to Plaintiff required Quezada's approval. Id. at 222. It appears that Plaintiff was the only employee to which Quezada's approval order applied. Quezada's deposition testimony regarding her memo supports Plaintiff's contention that his employer, and Quezada specifically, "were practically finishing to isolate me completely from the work I did." (Docket No. 93-13 at 113.) Whether Quezada's directive, and its disparate impact on Plaintiff, was motivated by Quezada's desire to retaliate against Plaintiff for his August 2012 internal complaint is a genuinely disputed, material fact to be resolved by the fact-finder, not the Court.

Further, Quezada's acknowledgement of her directive against Plaintiff substantiates Plaintiff's other factual allegations of retaliation by his employer. For example, Plaintiff testified that a similar order prevented him from receiving phone calls. Based on Plaintiff's understanding, the receptionist was instructed "not to forward any calls to [Plaintiff]" and "any case for [Plaintiff] had to first be channeled to [Quezada]." (Docket No. 93-13 at 113.) Standing alone, Plaintiff's mere allegation may not defeat summary judgment. Mesnick, 950 F.2d at 828-29 (affirming summary judgment where plaintiff's retaliation claim was not supported by any evidence of defendant's retaliatory motive). However, buttressed by Quezada's testimony that she ordered personal screening before work was assigned to Plaintiff, these allegations create a colorable showing that Defendants additional measures against Plaintiff were retaliatory.

Civil No. 14-1636 (GAG)

1    The competing accounts of Plaintiff's workflow and Defendants' actions from August

2  2012 to October 2013 create a genuine issue of material fact as to whether Defendants'

3  justifications for Plaintiff's reduced workload and subsequent termination were pretextual.  Taking

4  the evidence in the light most favorable to Plaintiff, Liberty Lobby, 477 U.S. at 248, there is

5  sufficient evidence from which a reasonable jury could find in favor of Plaintiff's ADEA

6  retaliation claim.  Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment as to

7  Plaintiff's ADEA retaliation claim.

8              D.  ADEA: Hostile Work Environment Claim

9    Plaintiff also appears to set forth a hostile work environment claim.  The First Circuit has

10  recognized hostile work environment claims as actionable under the ADEA.  Collazo v. Nicholson,

11  535 F.3d 41, 44 (1st Cir. 2008).  To succeed on an ADEA hostile work environment claim, a

12  plaintiff must show: (1) he is a member of the class protected by the ADEA; (2) he was subjected

13  to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was

14  sufficiently pervasive or severe so as to alter the conditions of the plaintiff's employment and

15  create an abusive work environment; (5) the objectionable behavior was both subjectively and

16  objectively offensive, such that a reasonable person would find it hostile or abusive; (6) that the

17  plaintiff found it hostile or abusive; and (7) some basis for employer liability has been established.

18  See Gutierrez-Lines v. P.R. Elec. & Power Auth., 751 F. Supp. 2d 327, 341-42 (D.P.R. 2010)

19  (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

20    The test for proving hostile work environment is not mathematically precise.  Harris v.

21  Forklift Sys. Inc., 510 U.S. 17, 22 (1993).  A court must examine the totality of the circumstances,

22  including "the frequency of the discriminatory conduct; its severity; whether it is physically

23  threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

24

25

**Civil No. 14-1636 (GAG)**

with an employee's work performance.  Id. at 23.  However, teasing and isolated comments do not

create a hostile work environment.  Faragher, 524 U.S. at 788.  "The Court's function is one of

screening to determine whether, on particular facts, a reasonable jury could reach such a

conclusion." Lugo v. Avon Prod., Inc., 777 F. Supp. 2d 275, 293 (D.P.R. 2011) (citing Noviello v.

City of Boston, 398 F.3d 76, 94 (1st Cir. 2005)).

Plaintiff alleges he suffered from an abusive work environment due to his age because he

received "cold" treatment from Mr. Pablo Dardet and Quezada, his working conditions were

hindered by the termination of his secretary, Defendants excluded him from important meetings,

Defendants failed to provide computer training, and Mr. Pablo Dardet reprimanded Plaintiff

through via interoffice memoranda.  (Docket Nos. 83-2 ¶ 108; 92-1 ¶ 93.)

These facts do not suggest Plaintiff suffered any type of unwelcome harassment as a result

of his age.  The conduct alleged does not suggest any age-based animus towards Plaintiff.  See

Franco v. Glaxosmithkline, No. 06-1781 (JAG), 2009 WL 702221 at *27 (D.P.R. Mar. 11, 2009)

(no discriminatory animus when defendant called plaintiff "old man" numerous times per day).

Moreover, Defendants' actions were not so pervasive as to create an hostile environment.

Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 92 (D.P.R. 2007) (no

hostile environment based on name-calling).  Here, the only allegedly hostile communications

were Mr. Pablo Dardet's reprimands, which did not contain any insults and did not reference age.

(Docket No. 90 at 14-26).

The undisputed facts show that even despite the workplace problems evidenced in the

record, Plaintiff was an excellent employee.  (Docket Nos. 83-2 ¶ 129; 92-1 ¶ 109.)  Additionally,

Plaintiff was always able to execute his duties in an effective, even excellent manner.  (Docket

Nos. 83-2 ¶ 130; 92-1 ¶ 110.)  Even if Plaintiff suffered some type of unwelcome age-based

26

harassment, the record lacks sufficient evidence for a reasonable fact-finder to conclude that the allegedly hostile environment affected Plaintiff's performance.  See Colon v. Medtronic, Inc., No. 13-1569 (GAG), 2015 WL 5089494, at *19 (D.P.R. Aug. 27, 2015) (finding no altered work conditions based solely on work assignments plaintiff subjectively perceived as discriminatory).

Taking Plaintiff's allegations as true and considering the record in Plaintiff's favor, the Court finds insufficient evidence of a severe or pervasive discriminatory workplace constituting a hostile work environment at STPR.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's ADEA hostile work environment claim.

### E.  ADA: Discrimination Claim

The ADA prohibits an employer from discriminating against a qualified person with a disability because of his or her disability or perceived disability.  42 U.S.C. § 12112(a).  To prevail on a disability discrimination claim, a plaintiff must show by a preponderance of the evidence that he (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability.  Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 32 (1st Cir. 2011).  Failure to meet any of the three *prima facie* elements is dispositive of the entire claim.  See Mulloy v. Acushnet Co., 460 F.3d 141, 154 n.8 (1st Cir. 2006).

Plaintiff fails to establish the *prima facie* elements of ADA discrimination because his medical condition was not a disability under the ADA.  Under the ADA, a disability is a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(1)(A).

27

Civil No. 14-1636 (GAG)

In this case, the health condition at issue is Plaintiff's kidney stone for which Plaintiff was hospitalized for nine days.[12]   (Docket Nos. 83-2 ¶ 162; 92-1 ¶ 140.)   During the hospitalization, Plaintiff passed the kidney stone.  (Docket Nos. 83-2 ¶ 162; 92-1 ¶ 140.)   Afterwards, Plaintiff stayed home and recovered for three weeks before returning to work on his doctor's advice. (Docket Nos. 83-2 ¶¶ 166, 169; 92-1 ¶¶ 144, 147).   Plaintiff completely recovered and suffered no other limitations after the three-week recovery time.  (Docket No. 83-2 ¶ 168).

Plaintiff's kidney stone was not a disability because it did not substantially limit his major life activities.   Rather, it was a brief and temporary medical condition with discrete beginning and end points.  See Clemente v. Exec. Airlines, Inc., 213 F.3d 25, 32-33 (1st Cir. 2000) (concluding a former flight attendant failed to show temporary hearing loss was disability under ADA because she offered no evidence of how the impairment limited her hearing, speaking, or work for the long term).   Other courts have viewed a one-time kidney stone condition similarly.   See, e.g., Mastrio v. Eurest Servs., Inc., No. 13-0564 (VLB), 2014 WL 840229, at *5 (D. Conn. Mar. 4, 2014) (holding that a one-month work absence due to a kidney stone presented a temporary, one-time issue that was not a physical impairment substantially limiting a major life activity); Clay v. Campbell Cnty. Sheriff's Office, No. 12-0062 (NKM), 2013 WL 3245153, at *3 (W.D Va. June 26, 2013) (where plaintiff's kidney condition was not an ADA disability because it was temporary and not substantially limiting, and once the condition resolved, did not affect her ability to work).

---

[12] Plaintiff seems to vaguely assert other health conditions rendered him disabled.  See Docket 92-1 ¶ 146 ("Defendants alleged uncontested material fact 168 with regard to this particular condition, the kidney stone, but still he had the other health conditions which, as stated and evidenced above, were known to defendants, and which he declared during his deposition.").  Plaintiff's response does not deny Defendants' Statement of Uncontested Material Fact ¶ 168 and is therefore deemed an admission.  See L. Civ. R. 56(c).  Additionally, Plaintiff does not support the "other health conditions" with proper record citations.  Therefore, the Court considers only Plaintiff's kidney condition for the purposes of Plaintiff's ADA claim.

Civil No. 14-1636 (GAG)

Even if Plaintiff's nine-day hospitalization due to a kidney stone constituted a disability under the ADA, Plaintiff's ADA claim fails because Defendants did not know about his condition at the time of the October 2013 RIF.  Quezada presented the October 2013 plan to Lessack in early September 2013.  (Docket Nos. 80-2 ¶ 80; 92-1 ¶ 72.)  Plaintiff had never suffered from a kidney stone condition before September 11, 2013.   (Docket Nos. 83-2 ¶ 164; 92-1 ¶ 142.)   Thus, Defendants could not have regarded Plaintiff as disabled before September 11, 2013.   Therefore, Plaintiff's kidney condition could not have been the basis for Plaintiff's termination.

Accordingly, the record does not contain sufficient facts to support Plaintiff's disability claim under the ADA.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's ADA discrimination claim.

### F.  Section 1983 Claim

Plaintiff asserts a claim under 42 U.S.C. § 1983.  Section 1983 creates a cause of action for plaintiffs alleging a government violation of rights protected by federal law.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  The first step in analyzing any § 1983 claim is whether the defendant acted under color of state law.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Plaintiff has alleged no facts that any Defendants were associated with the government in any way.  Therefore, Plaintiff's § 1983 claim fails.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim.

### G.  Puerto Rico State Law Claims

Plaintiff invokes the Court's supplemental jurisdiction to assert claims under Law 115; Law 80; Law 69; Law 100; Law 379; Law 44; Articles 1802 and 1803 of the Puerto Rico Civil Code; and Article II, §§ 1, 4, 6, 7, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico.  (Docket No. 5, ¶¶ 2, 7).  Defendants argue Plaintiff's Puerto Rico state law claims should be

**Civil No. 14-1636 (GAG)**

dismissed with prejudice, or alternatively, the Court should decline jurisdiction over the Plaintiff's supplemental claims.  (Docket No. 83-1 at 39-40.)

### 1.  Law 115

Law 115 is Puerto Rico's anti-retaliation statute.  The statute forbids employers from discriminating against employees for offering written or verbal testimony before legislative, judicial or administrative forums.  P.R. LAWS ANN. tit. 29, § 194a.  "This court has previously held that ADEA and Law 115 retaliation claims are similar and have parallel evidentiary mechanisms." Baerga-Castro v. Wyeth Pharm., No. 08-1014 (GAG), 2009 WL 2871148, at *13 (D.P.R. Sept. 3, 2009) (citing Sanchez Borgos v. Venegas Const. Corp., No. 07-1592 (SEC), 2009 WL 928717, at *6-7 (D.P.R. Mar. 31, 2009)).

Accordingly, the Court incorporates its analysis of Plaintiff's ADEA retaliation claim and **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Law 115 claim.

### 2.  Law 80

Law 80 requires employers to compensate at-will employees who are discharged without just cause.  Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013). When a genuine issue of material fact exists as to whether plaintiff's termination was retaliatory, a claim under Law 80 survives summary judgment as well.  Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 53 n.10 (1st Cir. 2010).

As discussed in the ADEA retaliation analysis above, Plaintiff's retaliation claim survives summary judgment because the record reveals genuine issues of material fact which must be resolved by the fact-finder.  The Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Law 80 claim.

Civil No. 14-1636 (GAG)

3. <u>Law 69</u>

Law 69 is Puerto Rico's sex discrimination statute.  P.R. LAWS ANN. tit. 29, § 1340.  Substantively, Law 69 aligns with Title VII's prohibitions.  <u>Hernández-Loring</u>, 233 F.3d at 52.

Plaintiff has not presented sufficient evidence of a sex discrimination claim.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 69 claim.

4. <u>Law 100</u>

Law 100 is Puerto Rico's anti-discrimination statute.  The statute imposes civil liability on an employer who discharges or discriminates against an employee on the basis of age, race, gender, and religion, among other things.  P.R. LAWS ANN. tit. 29, §§ 146-151 *et seq*.  The First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous."  <u>Dávila v. Corporación De P.R. Para La Difusión Pública</u>, 498 F.3d 9, 18 (1st Cir. 2007).  In the context of age discrimination, Law 100 "differs from the ADEA only with respect to how the burden-shifting framework operates."  <u>Id</u>.

As discussed in the ADEA age discrimination analysis above, Plaintiff has not presented sufficient evidence to establish any genuine issue of material fact with regard to his claim of age discrimination.  Therefore the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 100 claim.

5. <u>Law 44</u>

Law 44 bans discrimination against the disabled by any public or private institution that receives funds from the Commonwealth of Puerto Rico. P.R. LAWS ANN. tit. 1, § 502.  Specifically, Law 44 provides that said institutions may not take any action to "discriminate against persons with some type of physical or mental disability."  <u>Id</u>. at § 504.  This statute was modeled after the ADA and sought to harmonize Puerto Rico state law with federal ADA

Civil No. 14-1636 (GAG)

provisions.  See Arce v. ARAMARK Corp., 239 F. Supp. 2d 153, 169 (D.P.R. 2003).  Thus, the elements of proof for a Law 44 claim are essentially the same as under the ADA.  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 87 (1st Cir. 2008); see also Torres v. House of Representatives of the Commonwealth of P.R., 858 F. Supp. 2d 172, 194 (D.P.R. 2012) (finding no basis for individual liability under Law 44 on the rationale that its model, the ADA, does not provide for individual liability).

Adopting the analysis of Plaintiff's ADA disability discrimination above, Plaintiff has not presented sufficient evidence to establish any genuine issue of material fact with regard to the Law 44 claim.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 44 claim.

### 6.  Law 379

Law 379 regulates working hours, days, overtime calculations, and compensation.  P.R. LAWS ANN. tit. 29, §§ 271-288 et seq.  Law 379 largely mirrors the compensation regulations of the Fair Labor Standards Act ("FLSA").  See, e.g., Velázquez Fernandez v. NCE Foods, Inc., 405 F. Supp. 2d 179, 195-96 (D.P.R. 2005) (analyzing Law 379 and FLSA under the same framework).

Here, Plaintiff has not asserted a claim under the FLSA and has not set forth any facts in support of a Law 379 claim.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 379 claim.

### 7.  Articles 1802 and 1803

A plaintiff may bring an additional claim for tortious or negligent conduct under Articles 1802 and 1803 only if the conduct is distinct from the conduct covered by the specific labor law. Reyes-Ortiz v. McConnell Valdes, 714 F. Supp. 2d 234, 239 (D.P.R. 2010) (citations omitted); Santini Rivera v. Serv. Air Inc., 137 P.R. Dec. 1 (P.R. 1994).

Civil No. 14-1636 (GAG)

Here, Plaintiff has not set forth independent grounds for a tort claim.  As such, Plaintiff is barred from bringing claims under Articles 1802 and 1803 because the conduct Plaintiff alleges is based on the same facts that give rise to Plaintiff's causes of action under Puerto Rico's retaliation statute.  Reyes-Ortiz, 714 F. Supp. 2d at 239; see also Blasco Figueoa, No. 14-1395 (GAG), 2016 WL 1122003, at *8 (D.P.R. Mar. 22, 2016).  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Article 1802 and 1803 claim.

### 8.   Puerto Rico Constitution

Plaintiff refers to Article II, §§ 1, 4, 6, 7, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico in his Amended Complaint.   (See Docket No. 5 ¶¶ 7, 15.) Plaintiff's fifth cause of action includes an allegation of age discrimination in violation of "the Constitution of the Commonwealth of Puerto Rico as well as other state laws regarding damages." (Docket No. 5 ¶¶ 89-90.)  Neither parties address the merits of Plaintiff's claims arising under the Puerto Rico Constitution.

"A party may not simply throw a statutory reference into a complaint hoping to later flesh out its claim with facts in support."  Ruiz Rivera, 521 F.3d at 88.  Yet, that is precisely what Plaintiff has done.  Plaintiff has failed to meet even the most basic pleading requirements for any claims under the Puerto Rico Constitution.  See id. at 87-88 (affirming the district court's decision not to address plaintiff's passing statutory reference to Puerto Rico state law claims when plaintiff did not assert the viability of those claims in opposition to summary judgment); Colón-Fontánez, 660 F.3d at 46 (finding no error in a district court's determination not to consider an "entirely unarticulated" equal protection claim at summary judgment).

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims arising under Article II of the Constitution of the Commonwealth of Puerto Rico.

33

Civil No. 14-1636 (GAG)

### V.        Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment at Docket No. 83 is **GRANTED in part and DENIED in part.**

To recapitulate, Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's ADEA retaliation claim.  Additionally, Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's Law 115 and Law 80 Puerto Rico state law claims.  Only those three claims survive.  For all other claims, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's claims are hereby **DISMISSED with prejudice**.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 16th day of September, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

34